HENRY OLIVER, APPELLANT, V. JAMES F. LANSING, APPELLEE.

FILED MAY 6, 1896. No. 6428.

1. **Principal and Agent: CONFLICT OF INTEREST: SALE OF LAND: RATIFICATION: DAMAGES: LIMITATION OF ACTIONS.** An agent who sells his own property to his principal under general instructions which require him to do the best he can for his principal, and which evidence a special trust reposed in him, may be held to account by the principal for the difference between the real value of the property and the price at which it was sold, and the fact that the principal before bringing suit has mortgaged such property does not impair his right to maintain an action for the amount of such difference; neither does the lapse of time, short of the period of limitation fixed by the statute.

2. ———: ———: **ABUSE OF TRUST: LIABILITY OF AGENT.** An agent who has taken advantage of confidence reposed in him by his principal to profit himself at the expense of such principal can only be relieved of liability to the extent to which a clear preponderance of all the evidence shows that he ought to be relieved in view of his dishonest conduct.

3. Retraxit: DISMISSAL: FRAUD: SUBSEQUENT ACTION. The mere dismissal of an action and publication by plaintiff of a notice that he believed he had done wrong in commencing such suit cannot be successfully shown in bar of another suit commenced upon the same causes of action.

APPEAL from the district court of Lancaster county. Heard below before HALL, J.

The facts and issues appear in the statement of the commissioner.

*Halleck F. Rose* and *Webster, Rose & Fisherdick*, for appellant:

It is essential to the validity of a judgment that the court find, either specially or generally, upon the facts in controversy. (Code, sec. 297; *Sprick v. Washington*, 3 Neb., 255; *Howard v. Lamaster*, 13 Neb., 221; *Smith v. Silvis*, 8 Neb., 164; *Mason v. Embree*, 5 O., 278; *Headley v. Roby*, 6 O., 524.)

Under the general prayer a court of equity may grant any specific relief to which the claimant may appear entitled. (1 Daniels, Chancery Pleading & Practice [6th Am. ed.], 378, 379, note 3; *Beaumont v. Boultbee*, 5 Ves. [Eng.], 485; *Bullock v. Adams*, 20 N. J. Eq., 367; *McGlothlin v. Henery*, 44 Mo., 350; *Kirksey v. Means*, 42 Ala., 426; *Moore v. Mitchell*, 2 Woods [U. S. C. C.], 483; *M'Nairy v. Eastland*, 10 Yerg. [Tenn.], 310.)

Loyalty to his trust is the first duty of the agent. (*People v. Overyssel*, 11 Mich., 225; *Tisdale v. Tisdale*, 2 Sneed [Tenn.], 596; *Switzer v. Skiles*, 3 Gil. [Ill.], 529; *Bunker v. Miles*, 30 Me., 431; *Keighler v. Savage Mfg. Co.*, 12 Md., 383; *European & N. A. R. Co. v. Poor*, 59 Me., 277; *Rochester v. Levering*, 104 Ind., 562; *Tate v. Williamson*, L. R., 2 Ch. App. [Eng.], 55.)

Proofs of express disaffirmance will override any implication of affirmance or ratification by conduct or acquiescence. The law does not imply a ratification where an express disaffirmance has been made. (Mechem,

Agency, sec. 152; *McClure v. Evartson,* 14 Lea [Tenn.], 495.)

The action accrued on discovery of the fraud, and plaintiff had four years thereafter in which to commence suit. (Code, sec. 12; *Foley v. Holtry,* 41 Neb., 564, 43 Neb., 133; *Richards v. Hatfield,* 40 Neb., 879; *Nash v. Baker,* 40 Neb., 294.)

Where the vendor makes material representations as to the character, quality, or location of his real estate, and the vendee believes, relies, and acts upon the representations, and they prove to be false, the vendor cannot shield himself from the consequences of his fraudulent conduct by interposing the plea of laches on part of the vendee. (*Hoock v. Bowman,* 42 Neb., 80, 87.)

The mortgages executed by vendee did not operate as a confirmation of the fraudulent sale. (*Montgomery v. Pickering,* 116 Mass., 227; *McClure v. Evartson,* 14 Lea [Tenn.], 495; *Doughaday v. Crowell,* 11 N. J. Eq., 201; *McKnight v. Thompson,* 39 Neb., 752.)

Mere submission to an injury for any time short of the period limited by statute does not take away the right of action. (*De Bussche v. Alt,* L. R., 8 Ch. Div. [Eng.], 286, 314; *Foley v. Holtry,* 41 Neb., 564, 43 Neb., 133; Code, sec. 12.)

The ratification or affirmance of a fraudulent transaction is, in effect, a new contract to forgive the fraud practiced and condone the wrong done, made consciously with such intent and purpose; and in case fraud is actually established, this defense must stand upon the clearest evidence, because the act is so inconsistent with justice and so likely to be connected with the fraud. (*Montgomery v. Pickering,* 116 Mass., 227; *Tarkington v. Purvis,* 128 Ind., 187; *Moxon v. Payne,* L. R., 8 Ch. App. [Eng.], 881; *Morse v. Royal,* 12 Ves. [Eng.], 355; *Crowe v. Ballard,* 1 Ves., Jr. [Eng.], 215; *Staley v. Housel,* 35 Neb., 172.)

The knowledge of the existence of a right of defense and the intention to relinquish it must concur in order to estop a party by waiver. (*Henry & Coatsworth Co. v. Fish-*

*erdick,* 37 Neb., 207; *Livesey v. Hotel Co.,* 5 Neb., 50; *Cutler v. Roberts,* 7 Neb., 14.)

That there should be any waiver, ratification, or intentional relinquishment is utterly inconsistent and irreconcilable with continued and acrimonious controversy between the parties over the subject of the sale, shown clearly by the evidence to have existed. (*Tarkington v. Purvis,* 128 Ind., 182; *Montgomery v. Pickering,* 116 Mass., 227; *Moxon v. Payne,* L. R., 8 Ch. App. [Eng.], 881.)

It was not necessary for plaintiff, in order to maintain his suit in equity for a rescission, to make formal delivery or tender of a deed. (*Smith v. Gibson,* 25 Neb., 518; *Harrington v. Birdsall,* 38 Neb., 176; *Homan v. Laboo,* 1 Neb., 205; *Aultman v. Steinan,* 8 Neb.,114; *Knappen v. Freeman,* 50 N. W. Rep. [Minn.], 533.)

Equity raises a presumption against the validity of all transactions wherein the agent unites his personal and his representative characters; and in such case the onus of proving affirmatively the fairness of the contract and of overcoming this presumption of invalidity is on the agent who claims a right under it. (2 Pomeroy, Equity Jurisprudence, secs. 956, 959; *Noble v. Moses,* 81 Ala., 540.)

Rescission is not the only relief grantable in equity, and though the court, for some reason, may refuse to grant rescission, it must still give plaintiff some adequate relief for the wrong done him. (*Herrin v. Libbey,* 36 Me., 357; *Gould v. Cayuga Nat. Bank,* 86 N. Y., 83; *Baker v. Ziegler,* 56 Hun [N. Y.], 405; *Van Rensselaer v. Van Rensselaer,* 113 N. Y., 214; *Holland v. Anderson,* 38 Mo., 55; *Swift v. Dewey,* 20 Neb., 107; *Buchanan v. Griggs,* 20 Neb., 165.)

*Charles O. Whedon,* also for appellant:

An agent should not, when acting for his principal, at the same time act for himself; and all profits made and advantage gained by the agent in the execution of his

agency belong to the principal. It matters not how the profit or advantage arises, either by the performance or violation of duty, or by the suppression of material facts. If the duty of the agent is strictly performed, the resulting profit or advantage belongs to the principal, as the consequence of the relation. If the profit or advantage arises from violation of duty on the part of the agent, then it belongs to the principal, because the agent shall not profit by his own wrong. It is only by a rigid adherence to this rule that all temptation can be removed from one acting in a fiduciary capacity, to abuse his trust or seek his own advantage. (*Jansen v. Williams*, 36 Neb., 869; Mechem, Agency, secs. 129, 455, 469, 470; 1 Story, Equity Jurisprudence, secs. 321, 322, 465, note 2.)

*Marquett, Deweese & Hall,* contra:

The failure of plaintiff to promptly repudiate the sale and to demand repayment of the purchase money, and his conduct in persuading defendant to enter a joint business enterprise, in offering to sell back the block, in accepting benefits under his deed, in exercising rights of ownership, and in mortgaging the property constitute a ratification of the alleged fraudulent transaction and preclude rescission. (*Leaming v. Wise*, 73 Pa. St., 173; *Whitcomb v. Denio*, 52 Vt., 382; *Baker v. Lever*, 67 N. Y., 304; *Dayton v. Monroe*, 47 Mich., 193; *Cobb v. Hatfield*, 46 N. Y., 533; *Masson v. Bovet*, 1 Den. [N. Y.], 69; *Sinclair v. Neill*, 1 Hun [N. Y.], 80; *Lewis v. McMillen*, 41 Barb. [N. Y.], 420.)

Plaintiff having framed his bill on the theory that he rescinded the contract, and having tried the case upon that theory, cannot afterward resort to the action for damages for fraud and deceit. (*Corry v. Gaynor*, 21 O. St., 277; *Bank of Beloit v. Beale*, 34 N. Y., 473; *Bowen v. Mandeville*, 95 N. Y., 240; *Mercier v. Lewis*, 39 Cal., 533; *Jaeger v. Kelley*, 52 N. Y., 274; *Stevens v. Mayor of New York*, 84 N. Y., 296.)

*Pound & Burr* and *Roscoe Pound,* also for appellee:

A finding of fact will be given full effect as such though included by the court in a finding or conclusion of law. (*Cushing v. Cable,* 54 Minn., 6; *Sherman v. Hudson R. R. Co.,* 64 N. Y., 254; *In re Clark,* 119 N. Y., 427; *Burton v. Burton,* 79 Cal., 490; *In re Bullard,* 31 Pac. Rep. [Cal.], 1119; *Wells v. Yarbrough,* 84 Tex., 660; *Canadian-American Mortgage & Trust Co. v. McCarty,* 34 S. W. Rep. [Tex.], 306.)

A party defrauded must be diligent in making inquiry. Means of knowledge is equivalent to knowledge. A clue to the facts, which, if followed up diligently, would lead to a discovery, is equivalent to knowledge. (*Gillespie v. Cooper,* 36 Neb., 775; *Parker v. Kuhn,* 21 Neb., 413.)

If, after discovering the untruth of representations, a party conducts himself with reference to the transaction as though it were still subsisting and binding, he thereby waives all benefit of relief from the misrepresentations. (2 Pomeroy, Equity Jurisprudence, secs. 817, 897, 916; *Schiffer v. Dietz,* 83 N. Y., 300; *Bassett v. Brown,* 105 Mass., 551; *Merrill v. Wilson,* 66 Mich., 232; *Weeks v. Robie,* 42 N. H., 316.)

After a party has obtained knowledge of fraud, or has been informed of facts and circumstances from which such knowledge would be imputed to him, delay in bringing suit, though for a less period than that prescribed by statute, will be regarded as acquiescence and will bar equitable relief. (2 Pomeroy, Equity Jurisprudence, sec. 917; *Wilbur v. Flood,* 16 Mich., 40; *Ackerly v. Vilas,* 21 Wis., 88; *Strong v. Strong,* 102 N. Y., 69; *Haldane v. Sweet,* 55 Mich., 196; *Bailey v. Fox,* 78 Cal., 389; *Burkle v. Levy,* 70 Cal., 250; *Cummins v. Lods,* 2 Fed. Rep., 661; *Hoyt v. Latham,* 143 U. S., 553; *Disbrow v. Secor,* 58 Conn., 35.)

There is no allegation in the petition that plaintiff relied upon the pretended representations. Such an allegation is necessary. (*Stetson v. Riggs,* 37 Neb., 797; *Upton v. Levy,* 39 Neb., 331.)

The remedies by rescission and by way of damages are entirely inconsistent, and the adoption of one excludes the other. Where a party has made an election he must abide by it. (*Schiffer v. Dietz*, 83 N. Y., 300.)

Plaintiff cannot abandon specific relief prayed for and seek relief of another character under a prayer for general relief. (*Hiern v. Mill*, 13 Ves., Jr. [Eng.], 113; *Allen v. Pullman Palace Car Co.*, 139 U. S., 658; *Kent v. Lake Superior Co.*, 144 U. S., 75; *Pickens v. Knisely*, 29 W. Va., 1; *Welch v. Bayand*, 21 N. J. Eq., 186; *Chalmers v. Chalmers*, 6 Harr. & J. [Md.], 29; *Cloud v. Whiteman*, 2 Del. Ch., 23; *Walker v. Hill*, 21 N. J. Eq., 191.)

Where the facts are fully disclosed, and the agent acts in good faith, a sale to the principal must stand the same as a purchase from a third person. (Mechem, Agency, sec. 466; *Fisher's Appeal*, 34 Pa. St., 29.)

RYAN, C.

On the 22d day of September, 1892, Henry Oliver filed in the office of the clerk of the district court of Lancaster county his petition, in which he averred that in 1872 plaintiff was an infant; that in said year 1872 the defendant married the plaintiff's sister; that since said marriage until the disagreements in the petition described plaintiff had trusted defendant as though he had been plaintiff's older brother; that since the year 1883 the defendant had resided in the city of Lincoln, while the plaintiff was residing in New York, Georgia, and North Carolina, until the month of March, 1891, during which time the plaintiff had large property interests in Lincoln, the management of which, by reason of his confidence in defendant, plaintiff intrusted to said defendant; that by reason of sales and rents collected the defendant had during this time received large sums of money, and had paid out money for taxes, repairs, and other purposes; that in the month of March, 1891, plaintiff became, and has since continued to be, a resident of the city of Lincoln. It will avoid the necessity

of again reciting the above facts to note, at this otherwise inappropriate place, that the evidence clearly substantiated each of the above allegations.   As a reason for not bringing this action earlier than September 22, 1892, plaintiff averred in his petition that, after March, 1891, plaintiff, owing to his faith in the integrity of defendant and in defendant's repeated promises to account for all moneys of plaintiff received and disbursed by defendant between 1883 and March, 1891, was induced to expect that an amicable adjustment might be made as to matters unsettled between plaintiff and defendant. As often happens in matters of accounting, the dispute between these parties litigant at the trial narrowed down to the consideration of but few of the disputed items, in this particular case three in number, as to which, as briefly as possible, the issues joined shall now be described.

In October, 1885, plaintiff, then a resident of Charlotte, North Carolina, was the owner of lot 9, in block 220, of the city of Lincoln, which lot was then under the management of the defendant; that at defendant's request plaintiff signed in blank a deed, which was left with defendant for immediate use in case a sale of such lot could be made; that on October 8, 1885, the defendant sold said lot to J. B. Trickey for the actual consideration of $450, and, by the use of aforesaid blank deed, effected a conveyance thereof to Trickey without informing plaintiff of the terms of such sale.   It was further charged by plaintiff that the defendant fraudulently concealed the real consideration for the sale of lot 9, block 220, aforesaid, and of the real amount, $450, only accounted for $125, which sum the defendant represented was the entire consideration paid him for said lot. In his answer the defendant admitted the sale of the aforesaid lot, but alleged that the consideration was a diamond ring of the value of no more than $125, which sum defendant averred he had paid to plaintiff, and that said sum was the fair and reasonable value of said lot.

The defendant, further answering in this connection, alleged that he had informed the plaintiff of the true consideration of said sale, and had offered to turn said ring over to said plaintiff, if plaintiff so desired, but that plaintiff had refused to receive said ring and had expressed himself perfectly satisfied with the aforesaid amount received.

Of the three specially disputed items, the second was of the following nature, as described in the petition: Plaintiff for about two years before July 1, 1889, was a resident of Atlanta, Georgia, and just preceding the date just named sent to defendant a draft for the sum of $22,435.70 for investment in Lincoln real property, productive of a revenue and centrally located, at judicious prices according to the best judgment of the defendant, and that though such property could have then been easily purchased, the defendant did not follow plaintiff's instructions, but about July 10, 1889, falsely advised plaintiff that he was unable to buy property of the kind indicated, but had made to plaintiff a conveyance of block 9, containing sixteen lots, in East Lincoln, for $16,000, which was, as he represented, a less price than equally valuable property could have been purchased from any one else, and that at said price block 9 aforesaid would be a safe and profitable investment. The defendant in his answer denied that he had been directed to purchase improved, productive, and centrally located Lincoln property, but alleged that about July 1, 1889, plaintiff "transmitted said sum of $22,435.70 to the defendant, with the directions to invest the same in such real estate in the city of Lincoln as should by the defendant be selected and by him considered a safe and profitable investment," etc. The defendant in this connection made other averments of a ratification of the above transaction, with full knowledge of its nature, to which reference may be made later, but which need not now be further referred to in describing the issues specially contested.

Another of the three transactions above referred to was one in respect to which plaintiff was granted relief, and which, in the petition, was described in effect as follows: During the month of August, 1889, the defendant, having in his hands the aforesaid $22,435.70, wrote to plaintiff at Atlanta, Georgia, pretending to have found an opportunity to purchase a piece of ground of fifty feet frontage on O street, near Twentieth, in the city of Lincoln, for $4,700, which was a low price, and advised plaintiff to purchase the same as a safe and desirable investment, and that plaintiff having answered authorizing the defendant to exercise his own judgment as to this proposed purchase, the defendant replied that he had purchased said property for plaintiff for $4,700, whereas in truth and in fact the defendant had purchased but twenty-five feet frontage for $1,700, and for the other twenty-five feet had turned in property which he himself owned, of no greater value than the twenty-five feet which he had bought, but for the twenty-five feet which he turned in the defendant charged the plaintiff $3,000. In this connection plaintiff alleged that he did not discover until May of 1892 that the defendant had conveyed to him the twenty-five feet aforesaid and that he had charged him therefor $1,300 in excess of what defendant had paid for the same area of just as valuable property lying contiguous thereto. This petition closed with the following prayer:

"Plaintiff therefore prays:

"1. That the title to said block 9, in East Lincoln, held by plaintiff under said deed of conveyance of date February 10, 1888, from defendant, be decreed to be merely in trust for defendant, and that upon delivery to defendant, or to the clerk of the court for defendant's use, of a deed of conveyance thereof free and clear of any liens or incumbrances placed thereon by plaintiff, the plaintiff be discharged and released from said trust.

"2. For an accounting by defendant to plaintiff covering all moneys and credits and properties received and

controlled, rents and profits, receipts and disbursements
thereof, or therefrom, in the said business of handling
plaintiff's money and property from the year 1883.

"3. That in such accounting the defendant be charged
specially, first, with the fraudulent conversion of $325
received October 1, 1885, from the sale of said lot 9,
block 220, and interest be allowed to plaintiff from said
date thereon, together with moneys paid for taxes and
payment of interest from payment of each item; third,
with the fraudulent conversion of $1,300, August 1, 1889,
as an excess charge so wrongfully taken and withheld
on account of the conveyance of said O street property,
and that plaintiff be allowed interest thereon from said
date.

"4. That plaintiff have judgment for the amount found
due him on such accounting, and for such further, other,
or different relief as to the court may seem just and
equitable, and for costs of suit."

The defendant, by answer, joined issue as to the fraud
charged by plaintiff in each of the above transactions,
and alleged that plaintiff, with full konwledge of all the
facts therewith connected, had approved each of them.
As a further reason why plaintiff should not be entitled
to maintain his action, the defendant in his answer made
the following averments:

"And the defendant further answering alleges that on
or about the 28th day of June, 1892, the plaintiff com-
menced an action in the said court against the defend-
ant, and in his petition filed therein stated and set forth
the same cause and causes of action and the same sub-
ject-matter, and made the same allegations that are
stated and set forth and made in the petition in this
action, and that summons in said action so begun on
June 28, 1892, was duly issued out of said court and
served on this defendant, and that said last named action
was settled and by the defendant dismissed at his own
cost; that said court had jurisdiction of the subject-
matter and causes of action in said last named action

and of the parties thereto, and that by settlement and dismissal of the same as aforesaid the cause and causes of action, if any, and the subject-matter stated and set forth in the petition in this action have been settled, and that at the time of the settlement and dismissal of said action as aforesaid the plaintiff signed and delivered to the defendant a paper in writing in the words and figures following, to-wit:

" 'Takes it all back, was mistaken, and retracts everything.—I, Henry Oliver, do hereby acknowledge that I made a mistake in beginning suit for $50,000 against my brother-in-law, J. F. Lansing, it having been done in the heat of passion, and I never realized the great injustice done Mr. and Mrs. Lansing by so doing, as they have always been perfectly honest in all real estate and other dealings I have ever had with them.

" 'HENRY OLIVER.' "

There was also contained in the answer a statement of a cause of action against the plaintiff for the purchase price of an undivided one-half of certain lots bought by plaintiff from defendant in the sum of $10,000, and of another cause of action in the sum of $2,500, for services rendered by defendant for plaintiff. There was in the answer a prayer for judgment for $12,500 in favor of the defendant against plaintiff, together with interest and costs. The district court found due the defendant the sum of $10,000 and interest as prayed, but disallowed the claim of $2,500 on account of alleged services. As against the amount thus found for the defendant there was allowed in favor of plaintiff the sum of $1,300, with interest from August 31, 1889, at seven per cent per annum on account of the overcharge for the twenty-five-foot lot on O street. There was also allowed in favor of the plaintiff the sum of $106, with seven per cent interest thereon from August 11, 1890, because of an overcharge of a plumber's bill paid by Lansing. Having credited these two amounts, there was found due defendant from plaintiff, on June 26, 1893, the date of the decree, the

sum of $9,673.66. It was also adjudged that this sum
draw interest at the rate of seven per cent per annum
from the date of the decree, and that plaintiff pay
$166.35 and the defendant pay $279, the proportion of
costs made by the respective parties. As the debt of
$10,000 was contracted by Mr. Oliver after March 1, 1891,
and not through the agency of Mr. Lansing, and as in
respect to it the evidence is conflicting, the finding as to
this item must remain undisturbed. Since there was
amply sufficient evidence to sustain the findings of the
amounts credited Mr. Oliver upon the above $10,000
and interest, these, too, must stand. This leaves for
our consideration but two items,—one of which is on
account of the difference between $450, the real value,
and $125, the alleged value, of a diamond ring exchanged
by Mr. Trickey for lot 9, block 220; and the other the
$16,000 charged for the block 9 in East Lincoln. In re-
spect to the first of these two items the district court
concluded that plaintiff was entitled to no relief other
than to take the ring upon repayment of $125 to defend-
ant, and that as Mr. Oliver had not tendered this amount
he was not entitled to even this relief. In this view we
cannot concur. The evidence shows that a blank deed
was signed by Mr. Oliver, then an unmarried man, and
left with Mr. Lansing, who filled out this deed and de-
livered it to Mr. Trickey in exchange for the ring in
question. Mr. Oliver was always told that this ring was
of the value of no more than $125, and, indeed, in the
defendant's answer this is the value stated. In the con-
versation between Mr. Oliver and his sister, Mrs. Lan-
sing, she said to him, "Here is the $125 diamond ring
received for this lot; now that you are married, you will
probably want it." To this Mr. Oliver answered that
Mrs. Lansing might keep the ring, for he was under
obligations for what had been done for him to that or
perhaps a greater amount. In his petition Mr. Oliver
admitted the receipt of $125; hence this much must be
assumed to have been actually paid to Oliver. The un-

contradicted evidence of Mr. Trickey, however, was that
the retail cash value of the ring was $450. The false
statement of Mr. Lansing as to the value of the ring was
a violation of his duty toward his principal, and upon the
mere fact that Mr. Oliver believed and acted upon this
misstatement, Mr. Lansing can predicate no rights ad-
verse to the interests of Mr. Oliver. It was Mr. Lansing's
duty to inform his principal of the value of the ring
received by him, and then only could Mr. Oliver be bound
to accept such ring as full payment, if he received it at
all. If this agent, however, represented the value as
$125, and on that basis of value Mr. Oliver was induced
to receive it, the payment thereby as between the prin-
cipal and the agent was but $125, and it was of no avail
for Mr. Lansing to testify that someone else, not called
as a witness, had told him that the stone was worth only
$125. Mr. Oliver's right to the full value of this ring
in no way depended upon his refunding the sum of $125,
for, as we have already said, his agent was legally bound
to pay that sum, and much more in addition. Having
credited Mr. Lansing with this payment, there still re-
mains due from him to plaintiff the sum of $325, with
interest at seven per cent thereon from October 8, 1885,
on account of the sale of lot 9, block 220, in the city of
Lincoln.

It was not very fully shown why block 9, in East Lin-
coln, was conveyed to Henry Oliver in February, 1888.
It seems, however, that at that time Mr. Lansing was
having serious litigation with a Mr. Bookwalter, and
that he wrote to Mr. Oliver to make him an offer of
$10,000 for said block, of which $1,000 should be cash,
and that for the balance a note drawing eight per cent
interest should be given. The correspondence was not
put in evidence, but it seems to have resulted that a deed
was made by Mr. and Mrs. Lansing to Henry Oliver for
the recited consideration of $10,000. This deed Mr. Lan-
sing caused to be recorded. Contemporaneously with
the execution of the above deed, Mr. Oliver, then an un-

married man, made a deed back to Mr. Lansing whereby the said block was reconveyed, but Mr. Lansing did not file this deed for record. The suit of Bookwalter against Lansing was afterwards disposed of to Mr. Lansing's satisfaction, judging from a letter of his dated October 28, 1888, wherein he said, "Everything is settled and as clean as a pin." There was, however, no change in the status of the title of the aforesaid block 9. On July 4, 1889, Mr. Oliver sent to Mr. Lansing the sum of $22,435.70 for investment in real property in Lincoln. Whether or not there were instructions to invest this in inside, revenue-producing property was a very seriously contested question in the district court. It does not seem to us that it possessed the importance attributed to it, for, as we have already noted, Mr. Lansing in his answer admitted that the directions accompanying this remittance to him were to invest in such real estate in the city of Lincoln as Mr. Lansing should consider a safe and profitable investment. The testimony shows that Mr. Oliver paid Mr. Lansing for his services $8.33 per month, according to agreement, during all the time the latter acted as agent for the former. The above admission of the answer is to the effect that his money was entrusted to Mr. Lansing to be invested in such real property as in the judgment of Mr. Lansing would be likely to be safe and profitable. In answer to this letter of Mr. Oliver, Mr. Lansing testified that he wrote about July 30, 1889, that he had looked over the property in the city and had found nothing which would pay twelve per cent, as Mr. Oliver wanted, and that if Mr. Oliver desired to buy block 9, East Lincoln, he, Oliver, knew all about it, had seen it, and that the writer would like to pay some mortgages he owed and would sell block 9 aforesaid to Mr. Oliver for $16,000. To this proposition Mr. Lansing requested an answer on receipt of his letter, for, as he wrote, he had to do something about his own note in the Hartford bank. In answer to this letter Mr. Lansing received a telegram instructing him to use his

own judgment. In the telegram, however, were the words "see letter," and for this letter Mr. Lansing waited before acting further. This letter was as follows, in so far as it refers to the present subject:

"ATLANTA, GA., 7-31-1889.

"*J. F. Lansing, Esq., Lincoln, Nebr.*—DEAR BRO.: Your telegram received yesterday late in the day and answered this A. M. It would seem that the sixteen lots are bringing a rather steep price, but I suppose you know what they are worth. If I could get a piece of property that would bring me in say ten or twelve per cent it would be quite as well for me, but I expect such investments are scarce in Lincoln from now on. The money you have of mine I leave for you to invest for me, and I am not going to say anything if the purchase is made from your own property, as I know you would not take advantage of me. If I should buy the sixteen lots of you and put up a good house, say to cost $4,000, for myself to live in, it ought to help to sell the other lots and in that way make them pay out well. Do the best you can for me, and that is all any man can do, and I will be satisfied. Am pressed to get my mill finished by fall, as it is one of those big jobs that a man never sees the end of when once he gets in it.

"Your brother,    HENRY OLIVER."

In response Mr. Lansing sent Mr. Oliver the following letter:

"Aug. 6th, 1889.

"*Henry Oliver, Esq., Atlanta, Ga.*—DEAR BROTHER: Your letter of July 30, '89, at hand and noted. I have sold you my block 9, East Lincoln, for $16,000 cash and have charged your account with the same. As you have had title to it for about two years, as I never recorded the deed to me, I herewith return it to you canceled, and also the note you kindly made for my use one year ago, also canceled. I consider the block at this time worth $20,000 and would have sold to no one else for less,

and as you sent your money for to invest, and as I wanted to pay my $10,000, rather than pay interest, I have helped myself, and you have a bargain. I know if you build a residence to cost $4,000 you will get parties to buy and build, and you will get not less than $1,500 to $2,000 per lot. I have an eye on a couple of other pieces of property for you and may take them in. The taxes on the block assessed for 1889, payable 1890, will be for you to pay. We have been on our mountain trip and returned, had a very beautiful scenery trip and enjoyed the cool mountain air. Wish you and family had been with us. The boys go back on the 11th of September to school. Good-bye.

"From your brother      J. F. Lansing."

In this transaction, giving it the most favorable construction possible in favor of Mr. Lansing, he was the agent of plaintiff, in whom plaintiff reposed special confidence, and although doubtful whether the price fixed was not too great, the principal left it with Mr. Lansing to exercise his own judgment, limited only by the requirement that he should do the best he could for Mr. Oliver's interest. Whether or not Mr. Lansing followed these instructions must determine whether or not this sale of his own property through himself as agent to Mr. Oliver was binding upon the latter. In *Rockford Watch Co. v. Manifold*, 36 Neb., 801, it was held that an agent, for the purpose of selling goods, would not be permitted to sell to himself, even though the sale was public and no actual fraud appeared. In *Jansen v. Williams*, 36 Neb., 869, it was held that an agent's relation to his principal forbade his becoming a purchaser of his principal's property entrusted to him to sell, in any way, without the full knowledge by the principal of this fact and the principal's acquiescence with such knowledge, and that the burden of proving such knowledge and acquiescence was upon the agent. The principle of these cases is applicable to the case at bar to the extent that the law so far disapproves of an agent's right to sell his own property to

his principal that, if permitted at all, it must be under such circumstances that the principal must clearly appear to have acted upon his own judgment, independently of that of his agent, and the burden of showing facts necessary to validate such a sale devolves upon the agent.    To narrow the application of this principle, the requirement made of Mr. Lansing is that having retained $16,000 already in his hands in payment to himself for block 9, in East Lincoln, the burden of proof rests upon him to show either that his principal, with full knowledge of all the facts, approved the sale, or that Mr. Lansing acted exactly according to instructions; that is, that he has done the best he could for Mr. Oliver.    We do not assume to say that the latter alternative is correct as an abstract proposition of law, applicable in all cases, but that under his instructions Mr. Lansing can claim nothing more favorable to himself.    On behalf of Mr. Oliver there were examined twenty-four witnesses as to the value of block 9, in East Lincoln, at the date Mr. Oliver was charged $16,000 for it. · These, with one of the witnesses sworn on behalf of the defendant, fixed the value at and about $8,000.    The average of the valuations placed upon this block by the qualified witnesses for the defendant,—and there were thirty-two of these witnesses,—was $15,370. The district court having assumed that there was such acquiescence as barred plaintiff's right to recover in any event, made no finding as to what was the real value of this block in July or August of the year 1889.    From the testimony of Mr. Lansing's own witnesses it is very clear that when he wrote to Mr. Oliver on August 6, 1889, that this block was worth $20,000, he stated what he must have known was false, so that we cannot, if we would, assume that Mr. Lansing acted in good faith.    Another very significant fact is that, though Mr. Oliver afterwards offered to sell lots in this block singly, there has never been found any one willing to buy even one lot.    This block adjoined a street or highway on the south, just across which there was an

unplatted field. On the east from this block, across a half-block and an adjoining highway, there was another field. It was on the extreme eastern line of the city of Lincoln, and near it there was neither water, a street car line, nor gas or other public light. It was unimproved and consequently had little value except for purposes of speculation, and this was not the kind of property desired by Mr. Oliver, as Mr. Lansing well knew. While Mr. Lansing's first letter on this subject assumed that Mr. Oliver knew the location and something about this block, the evidence shows that this assumption was unwarranted, and that the only knowledge Mr. Oliver had of these matters was from what Mr. Lansing wrote him in the above quoted letter. Under these circumstances we conclude that there has been no satisfactory proof made that the value of block 9, in East Lincoln, at the time $16,000 was charged for it was worth that sum. As there was no finding on this question of value, this must be determined upon another trial in the district court.

It was, however, insisted most strenuously in the argument in this court that as Mr. Oliver had mortgaged a portion of these lots, he was in no condition to insist upon a rescission of the sale. From the fact that there seems to have been a decline in the value of real property in the vicinity of this block since August, 1889, we are inclined to give some weight to this consideration. Mr. Oliver had a right not only to insist upon a rescission, but he had the alternative right to retain the property and to compel Mr. Lansing to pay him the difference between the real value of this block and the amount collected from him, as this was, as its actual value. (*Building & Loan Association of Dakota v. Cameron*, 48 Neb., 124.) In respect to the effect of acquiescense in the purchase as affecting this right the language of Post, J., in *Fitzgerald v. Fitzgerald & Mallory Construction Co.*, 44 Neb., 463, is very apposite. He said: "Acquiescence in a fraudulent transaction is in effect a new agreement made

consciously with an intent to condone the wrong done, and will not be inferred from doubtful evidence, but should be established, like any other material fact, by the party asserting it. We are referred to no positive act indicating acquiescence in this instance, the only claim being that it should be inferred from the time intervening between the date of the action complained of and the institution of the suit, to-wit, one year, ten months, and seventeen days. Time alone, unaffected by other circumstances, will not bar the right to rescind a voidable transaction, since it is not for a wrong-doer to impose extreme vigilance and promptitude as conditions to the exercise of the rights of the injured party. (Pollock, Contracts, 548*; *Pence v. Langdon*, 99 U. S., 581; *Montgomery v. Pickering*, 116 Mass., 227; *Tarkington v. Purvis*, 128 Ind., 187; *Moxon v. Payne*, L. R., 8 Ch. App. [Eng.], 881; *Foley v. Holtry*, 41 Neb., 563.)" There was no proof of acquiescence other than that Mr. Oliver mortgaged the property as his own. This was entirely consistent with his election to retain the property and in no way affected his right to recover such damages as he had sustained, and from the quotation just made it is evident that mere lapse of time within the statutory period of limitation has not inured to the benefit of the defendant. We therefore conclude that Mr. Oliver is entitled to recover from Mr. Lansing on account of this transaction in relation to block 9, in East Lincoln, the sum of the difference between the charged and real value, with seven per cent interest thereon from the 6th day of August, 1889.

There was pleaded by the defendant as sufficient to bar this action the commencement of a suit by filing the same petition as has been filed in this case, the issue and return of summons thereon, and the subsequent dismissal of said suit a short time before the commencement of this one, and nearly contemporaneously with such dismissal the signing of a libel, as I suppose it would be called in vulgar parlance. These acts were procured to

be done by means of the false representations of an agent of Lansing that Lansing would sue for $50,000 if this was not done, and by the further false representation that a certain named attorney at law, held in high esteem by everybody who knew him, had said that he was commencing such a suit, and that as Mr. Oliver had never had a cause of action, he would be compelled to answer in a great amount of damages for commencing said first suit. This agent by these misrepresentations procured a dismissal of the said first suit, and the signing of a confession that Mr. Oliver had unjustifiably begun that action. We are at a loss to conjecture why it should be imagined that these acts of plaintiff's should be deemed sufficient to bar plaintiff of any rights he really has pleaded and proved in this action. The course taken to frighten Mr. Oliver was disgraceful alike to his agent and to Mr. Lansing himself. There was no final judgment in that case; neither was there a settlement. As to whether or not, in reality, Mr. Oliver had a right of action against Mr. Lansing on account of his duplicity, the final decision of this cause may determine, at least to some extent. The judgment of the district court is reversed and this case is remanded to the district court, with directions to enter a decree in conformity herewith, taxing all costs to the defendant.

REVERSED AND REMANDED.