Builder's Bond & Mortgage Company, Appellant, v. John H. Bickley et al., Appellees.

Gen. No. 35,000.

Opinion filed October 9, 1931.

ROSENBERG, CORLETT & TOOMIN, for appellant.

EDWIN TERWILLIGER and GEORGE L. PILKINGTON, for appellees.

Mr. Justice Kerner delivered the opinion of the court.

On December 21, 1928, the complainant, Builder's Bond & Mortgage Company, filed its bill to foreclose a trust deed dated September 1, 1926, executed by defendants John H. Bickley and Letta M. Bickley, his wife, given to secure the note of the defendants for $20,000, payable in instalments of $400 each for 23 months commencing January 1, 1927, and the balance due on December 31, 1928, with interest at six per cent per annum, payable monthly on the whole amount remaining from time to time unpaid. The property secured by the trust deed was at 2200 Rosemont avenue, Chicago, and was known as the Rosemont property. In the trust deed the defendants covenanted to pay prior incumbrances and interest thereon at the time and place when due and payable, and agreed that in the event of a breach of any covenant of the trust deed the whole of the indebtedness secured by the trust deed would at the option of the legal holder become immediately due and payable, and might be recovered by foreclosure. The bill alleged failure to pay principal and interest due December 15, 1928, on a prior incumbrance securing an indebtedness of $76,000 and to pay complainant $2,148.87 accrued principal and interest due February 1, 1928, and to make principal payments of $200 each, due on the first day of October, November and December, 1928, respectively, with interest on the balance of the principal of the note remaining on said dates unpaid. Defendants answered, admitting the execution of the note and trust deed and alleged that only $17,000 had been received on the $20,000 note, the difference being retained as an usurious commission; alleged an agreement reducing payments of the instalments to $200 each and denied that they had defaulted in failing to pay principal and interest due December 15, 1928, on prior incumbrance, by averring that

the holders of the prior incumbrance had extended payment of the amount due 90 days; denied default had occurred February 1, 1928, in failure to pay accrued principal and interest of $2,148.87, but admitted that the October, November and December instalments of $200 each were due and unpaid, and averred that on December 11, 1928, complainant by resolution of its board of directors resolved that there should be no action taken to foreclose the trust deed.

The cause was referred to a master to take the testimony and report his conclusions of law and of fact. The master filed his report, in which he found that when payments of $606.75 and $330.50 were made by the defendants to complainant, said payments so made were made upon the agreement that nothing would be done until the mortgage matured, in order to give defendants time to complete a loan which they were making for the purpose of paying the balance due complainant; that defendants were not in default; that $3,000 was charged defendants for making the loan, which charge constituted usury, and that no action prior to the filing of the bill was taken by the complainant declaring the whole amount due, and recommended the bill be dismissed for want of equity. Objections to the report were ordered to stand as exceptions, which were overruled and a decree entered dismissing the bill for want of equity. To reverse the decree complainant has appealed.

It appears from the evidence that the complainant is a corporation engaged in the real estate mortgage loan business and defendant John Bickley, a real estate broker, was one of its incorporators and directors and its president from 1926 to the date of his resignation as such president and director some time in December; 1927; that the defendant John Bickley, Edward Sager and Nels Johnson constituted a committee whose duty it was to pass on loans made by the complainant. Edward Sager was Bickley's attorney and he submitted

the loan involved in the instant case to this committee, but it was not submitted to the board of directors until after the money had been paid in checks drawn at Bickley's office and sent to the treasurer for his signature, when it was accepted by the complainant. The note executed by the defendant was for $20,000, payable in monthly instalments of $400 each, commencing on January 1, 1927, with interest at six per cent per annum, payable monthly, on the whole amount of principal remaining from time to time unpaid, the balance being payable on December 31, 1928. Only $17,000 of the loan was actually paid by complainant. During the month of December, 1927, Bickley resigned his office in the complainant corporation and surrendered his stock to the complainant for which he received a credit of $5,000, and by agreement between the parties the defendant was credited with $1,760.22 on the loan in the instant case, the balance of the $5,000 being credited among other loans that he had with complainant. Some time between November 1, 1927, and January 1, 1928, it was agreed by the parties that the monthly instalments to be paid on account of the note be reduced from $400 to $200 a month, the $200 a month payments to commence February 1, 1928. From the date of the loan up to and including December 1, 1928, the defendants paid complainant on account of the note the sum of $7,169.41. The interest computed to December 21, 1928, the date of the filing of the bill, on the whole amount of principal remaining from time to time unpaid, assuming the loan to be $17,000 and not $20,000, amounts to $1,960.93, which sum deducted from $7,169.41, the amount actually paid, leaves the defendants a credit of $5,208.48.

It further appears that the premises were encumbered with a first mortgage for $76,000; that on December 15, 1928, there became due thereon a principal payment of $2,000 and interest amounting to $2,970; that defendants paid $500 on account and the balance

of $4,470 was past due and unpaid on December 21, 1928, and complainants in order to protect the lien of its junior trust deed, after the filing of the bill, on January 30, 1929, paid $1,500 and on February 27, 1929, $470 upon said prior incumbrance.

Before proceeding to a discussion of the contentions of the parties it will be necessary to arrive at a decision as to whether or not the loan is tainted with usury. It is conceded that at the time the loan was made by complainant Bickley was its president and director and that complainant paid and the defendants received $17,000 on the $20,000 note, the balance appearing on the books of complainant as a commission. Bickley testified he did not submit the loan to the board of directors because it was his mortgage and he did not think it was the proper thing to do; Sager testified that at a meeting of the board of directors the president read the financial report of the company which set forth the making of the loan and the board voted then to accept the making of the loan. Nels Johnson, secretary and director of the complainant, testified that Bickley reported to the board that the loan had been made, and the board accepted the loan. Joseph Hallner, a director, testified there was no authorization by the board of directors to make the loan; the loan was made by Bickley and then submitted to the company after it was made. John N. Wietor, treasurer and director, testified that the first he knew the loan had been made was after Bickley and Sager had told him about it, when Bickley called upon him to sign a check; that the loan was discussed at a meeting of the board of directors after it had been made. There is no escape from the conclusion that Bickley acted as the agent of complainant in loaning to himself the company's money, and the question arises will the loan under such circumstances be tainted with usury and the complainant punished by the imposition of the

penalty of loss of interest. An unlawful and corrupt intent is the very essence of an usurious transaction (*Boylston v. Bain,* 90 Ill. 283; 28 R. C. L. 208), and whether a contract is usurious depends upon the intention of the parties. (*Clemens v. Crane,* 234 Ill. 215; *Curtis v. LeMoyne,* 248 Ill. App. 99, 103.) We are of the opinion that the evidence in the instant case fails to show an unlawful and corrupt intent to charge the defendants with an usurious interest. Furthermore, the defendants are in no position to raise that question, because of the fiduciary relationship existing between Bickley and the complainant. It would be unconscionable for Bickley as the trusted agent, president and director of the complainant to draw it into an usurious transaction and then insist upon the imposition of a penalty. Illustrative of the principle involved we desire to quote Mr. Chief Justice Marshall in *Short v. Skipwith,* 1 Brockenbrough's Reports 103, in which he said, p. 115:

"There is another part of this claim, which the Court touches with real reluctance. The contract of loan being for six per centum interest, when the legal interest was only five, was evidently usurious. The Court cannot decree a larger interest than the law allows, whatever may be the contract of the parties. But the person who drew the plaintiff into this contract, having been himself the agent, it would be against conscience, that he should derive any advantage to the prejudice of the plaintiff from this circumstance. The Court, therefore, allows the legal interest of five per centum."

*Gund v. Ballard,* 73 Neb. 547, was an action in equity between stockholders of a bank in the process of liquidation and its former president and director, in which he sought to set aside a judgment on his note given to the bank on the ground it was usurious. It appeared he was in general charge of the transaction

and had supervision of its affairs. The court said, p. 568:

"We are of the opinion that the law will not permit him, acting in the dual capacity in which he was, and in a sense the agent of his principal, the bank, to enter into a usurious contract with himself and his principal, and thereby escape all liability for the payment of interest on the principal sum of the indebtedness for which he thus became obligated. It must be accepted, we think, as fundamentally correct that he could not be permitted to profit by his own wrongful action, nor by the action of the bank on the one part and himself on the other, to the prejudice of the stockholders, he holding, as he did, the fiduciary relations then existing between him and the corporation and those it represented. *Sternberg v. Callanan,* 14 Ia. 251; *Oliver v. Lansing,* 48 Neb. 338. On the other hand, a court of equity will not enforce a usurious contract prohibited by law. A court of equity, it seems to us, should require him to do equity, and this demands of the plaintiff that in order to discharge his liability to the bank, he must pay the principal indebtedness, together with the legal rate of interest accruing thereon during the time of the running of the debt."

Moreover, the defendant before the master did not ask for the statutory penalty for usury, but stated that in the event the master finds that a decree should be entered, that such decree should find that there is due from defendants the sum of $17,000 with interest at six per cent per annum. A party litigant cannot try a case on one theory in the trial court and on another theory in the court of review. (*Lewy v. Standard Plunger Elevator Co.,* 296 Ill. 295, 304.) We conclude the defendant should be charged with interest at six per cent per annum on $17,000 from September 1, 1926.

Defendants in arguing for an affirmance say they were not in default as there was nothing past due when

the bill was filed because the law applies all interest paid on an usurious loan to the principal. We have already indicated that the transaction was not usurious. However, even if all the interest charged to the loan was applied to the principal the defendants were in default on December 21, 1928. The aggregate of the payments made by the defendants amounts to $7,169.41. Had the defendants promptly paid the instalments provided for by the note at $400 a month from January 1, 1927, up to and including January 1, 1928, and the reduced payments of $200 a month from February 1, 1928, to December 1, 1928, they would have paid $7,400, and as they have paid but $7,169.41, it is apparent they were in default at the date of the filing of the bill. In addition, however, the premises were encumbered with a first mortgage for $76,000 and on December 15, 1928, there became due thereon the principal payment of $2,000 and interest amounting to $2,970; defendants paid $500 on account and the balance of $4,470 was past due and unpaid on December 21, 1928. In the trust deed in the instant case defendants covenanted to pay this prior incumbrance and the interest at the time and place when due and payable. Their failure to pay was a breach of the covenant and they were in default on December 21, 1928. And there was no evidence of any extension granted defendants of the holders of this prior incumbrance.

The next contention is that in consideration of defendants making certain payments no action would be taken to foreclose the trust deed until its maturity, and is based upon the testimony of Sager who testified that at a meeting of the board of directors during the month of December, 1928, it was agreed that if he (Bickley) made one payment of three hundred and some dollars, no action should be taken or would be taken on that particular mortgage which was due January first or second, 1928. This contention cannot

be maintained. In the first place, Bickley testified he did not make the payment of $330.50 (being the payment referred to by Sager in his testimony), on the note in the instant case; second, we have examined the record and are of the opinion that the preponderance of the evidence fails to establish any such an agreement.

It is also claimed the bill was filed in direct violation of the orders of the board of directors. There is no merit in this contention. The bill was signed and verified by the treasurer. He testified that at a meeting of the board of directors he was instructed to declare the entire amount due on the note and to employ an attorney for foreclosure proceedings. Nels Johnson testified that at a meeting of the board shortly before December 20, 1928, Mr. Rosenberg was authorized to proceed with the foreclosure of all mortgages which were in default and that the mortgage in the instant case was part of the authorization. John N. Wietor testified that a meeting of the board of directors was held in December, 1928, at the office of Joseph Rosenberg at which the board was authorized to employ Joseph Rosenberg to foreclose Bickley's mortgages. Harry Luebbe testified he was present at the meeting of the board on December 20, 1928, at which a resolution was adopted to commence foreclosure proceedings against the Bickley mortgages. There was no evidence to the contrary.

After considering the entire record and the remaining arguments of counsel, we are of the opinion that the decree of the superior court should be reversed and the cause remanded with directions that the superior court enter a decree of foreclosure in favor of complainant in proper form, finding that there was due complainant on April 15, 1930, the date of the master's report, $15,011.68, in which is included $1,000 solicitor's fees, the master in his report having found that the

complainant has engaged a solicitor to bring and prosecute these foreclosure proceedings and that the fair, reasonable, usual and customary fee for the services rendered is $1,000, to which no objections were filed by the defendants. In the new decree to be entered the account should be stated as follows:

| | |
|---|---:|
| Principal loan | $17,000.00 |
| Accrued interest to Dec. 21, 1928 | 1,960.93 |
| | $18,960.93 |
| Less amount paid by defendants | 7,169.41 |
| Balance due for principal and interest at date of filing of bill | 11,791.52 |
| Money advanced on Jan. 30, 1929, on account of first mortgage indebtedness | 1,500.00 |
| Interest thereon from Jan. 30, 1929, to Apr. 15, 1930, being the date of the report, at 7% per annum | 126.88 |
| Amount advanced Feb. 27, 1929, on account of first mortgage indebtedness | 470.00 |
| Interest thereon from Feb. 27, 1929, to Apr. 15, 1930, the date of the report, at 7% per annum | 37.28 |
| Amount advanced for foreclosure minutes | 86.00 |
| Solicitor's fees | 1,000.00 |
| | $15,011.68 |

*Reversed and remanded with directions.*
GRIDLEY, P. J., and SCANLAN, J., concur.